IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2005

## ROLANDO CONTRERAS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. 9505 (P.C.R.)    Donald P. Harris, Judge**

_____

**No. M2004-02364-CCA-R3-PC - Filed September 26, 2005**

_____

The petitioner, Rolando Contreras, appeals the denial of post-conviction relief.  The single issue presented for review is whether the petitioner was denied the effective assistance of counsel.  The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and J.C. MCLIN, JJ., joined.

Dana M. Ausbrooks, Franklin, Tennessee (at trial and on appeal), and Patrick Frogge (on appeal), for the appellant, Rolando Contreras.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Derek Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In 2002, the petitioner was convicted of three counts of aggravated rape and two counts of aggravated assault.  The trial court imposed twenty-five-year sentences on each of the three convictions for aggravated rape and six-year sentences on each of the two convictions for aggravated assault.  All of the sentences were ordered to be served concurrently for an effective sentence of twenty-five years.

The petitioner appealed to this court, which affirmed the convictions but modified each of the sentences for aggravated rape to twenty-two years.  See State v. Contreras, M2002-01053-CCA-R3-CD (Tenn. Crim. App., at Nashville, Feb. 21, 2003).  Application for permission to appeal to our supreme court was denied on July 7, 2003.

The opinion of this court on direct appeal summarized the pertinent facts.  The evidence established that at approximately 5:00 a.m. on February 14, 2001, Adrianna Terrazas was awakened

by an intruder who was armed with a knife. Her eleven-year-old sister, Gloria, also saw that the man was holding a knife. Both girls testified that the intruder then entered the room of their sister, Maria Terrazas. The man held the knife to Maria Terrazas, touching her cheek at one point, and forced her to perform oral sex. He then penetrated her vagina with his penis, using his knife to cut off her underwear. The man then directed the victim to the kitchen where he tried unsuccessfully to penetrate her anally and then forced her at knife point to perform oral sex a second time. As he left, the perpetrator threatened to kill the victim if she reported the incident.

Later, the victim identified the petitioner from a police photograph as her assailant. An agent from the Tennessee Bureau of Investigation recovered a thumb print of the petitioner from the lightbulb of a lamp he had touched inside the victim's bedroom. While Adrianna Terrazas stated that a photograph of the petitioner was familiar, she was unable to state with certainty that the petitioner was the intruder.

Dr. Cindy Woodard, who observed dry semen in the vaginal area of the victim, performed a swab but the laboratory report was negative for the presence of semen. Dr. Woodard explained that the swab could have been dry or that she might have failed to properly swab the semen. Semen found on a blanket and bedspread was identified through DNA analysis as that of the victim's boyfriend.

On September 18, 2003, the petitioner filed this petition for post-conviction relief alleging, among other things, that he was denied the effective assistance of counsel. Counsel was appointed and in an amended petition the petitioner specifically alleged that trial counsel had failed to develop a reasonable trial strategy by supporting his alibi defense with witnesses, that he had failed to fully investigate and prepare for trial, and that he had failed to allow the petitioner to testify on his behalf. In a second amendment, the petitioner deleted his allegation that trial counsel had failed to allow him to testify.

At the evidentiary hearing, the petitioner, who testified through an interpreter, contended that he was poorly represented by his trial counsel, particularly regarding the DNA evidence, which he believed established his innocence. He claimed that he provided the names of five witnesses to his trial counsel but that only four of them were called to testify at trial. He stated that the fifth witness, named Jorge, could have testified that he had been asleep in his apartment at the time of the offense. The petitioner did not know the last name of Jorge and he explained that he did not know his whereabouts other than the fact that he was "possibly in Mexico." He could not recall whether his trial counsel had interviewed Jorge prior to trial. The petitioner also testified that he believed his trial counsel should have called the victim's boyfriend, whom he identified as Roberto Salnieras, as a defense witness because his DNA had been found at the scene of the crime. Without specifying why, the petitioner also complained that he was further dissatisfied with trial counsel's performance regarding the fingerprint evidence.

On cross-examination, the petitioner acknowledged that the witnesses who did testify on behalf of the defense at his trial contended that they had seen him sleeping at approximately 7:00

a.m. on the morning of the crimes. He conceded that he was unaware as to whether his counsel had interviewed the witnesses in advance of trial. The petitioner asserted that the jury was wrong in its verdict and contended that he had never gone into the bedroom of the victim or touched the lightbulb on her lamp. The petitioner, who had testified at his trial, denied having committed the rape.

Trial counsel, who had been appointed to represent the petitioner, testified that he and an investigator interviewed ten to twelve potential witnesses. He recalled that eight or ten individuals, all of whom were Mexican, lived in the petitioner's apartment and the three who had provided helpful information testified at trial. Trial counsel recalled that the petitioner's uncle, Louis Contreras-Rios, who spoke English, was one of the witnesses. It was the recollection of trial counsel that two of the three witnesses testified that they were "pretty certain" that the petitioner was at the apartment during the time period when the crimes occurred. A third, who was at the apartment, testified that he was asleep and that while he knew the petitioner was there during portions of the night and early morning, he was unaware of his whereabouts between 4:00 a.m. and 5:00 a.m., the time interval during which the crimes took place.

Trial counsel utilized an alibi defense and contended during the course of the trial that the petitioner was too large to have gained entry through a window by using a microwave as a step. He also contended the petitioner had once lived next door to the victim's family and when the petitioner vacated the apartment, he had possibly left behind a light bulb or lamp in his apartment. He speculated that someone in the victim's family had "grabbed the stuff, the furniture they needed and moved it into their apartment." Trial counsel also testified that the victim admitted that she had a boyfriend and had engaged in sex with him. He stated that the name of her boyfriend was Rolando Salnieras rather than Roberto Salnieras and that his investigator had conducted the investigation of the DNA evidence. Trial counsel was aware that the DNA was not that of the petitioner but also aware that the state had never contended that it was.

Trial counsel identified the other two alibi witnesses as Jose Raphael Rios Contreras and a Mr. Cammacho, both of whom he claimed to have talked to in advance of the trial. Trial counsel had no recollection of having failed to interview any of the prospective witnesses whose names had been supplied by the petitioner. He described the policy of the office as to first have the investigator locate and interview each potential witness and then have the attorney assigned to the case do a follow-up interview.

Trial counsel stated that he had in-depth discussions with the petitioner on three or four separate occasions in preparation for the trial and had never failed to discuss the case with the petitioner at any time he wanted to do so prior to trial. Trial counsel further stated that he received discovery materials from the state and that there was no part of the state's proof that surprised him in the course of the trial. According to trial counsel, the petitioner wanted to testify on his own behalf at the trial and did so.

At the conclusion of the evidentiary hearing, the post-conviction court first ruled that the petitioner was not entitled to relief on the basis that Jorge had not been called as a witness because

he had not been presented as a witness at the evidentiary hearing. The post-conviction court, after reviewing the evidence at trial, described the three alibi witnesses as somewhat helpful, but not entirely so because none were specifically watching the petitioner during the period of time that the crimes were committed; for example, one of the witnesses testified that he was in the apartment when the petitioner went to bed and he never heard the petitioner leave. In any event, the post-conviction court found no ineffectiveness in the presentation of the witnesses. The post-conviction court ruled that there was no DNA evidence connecting the petitioner to the crime and that the only semen found in the bed of the victim was that of her boyfriend. Under these circumstances, the post-conviction court concluded that trial counsel had not been ineffective in regard to the presentation of the DNA evidence. The post-conviction court, after observing that a witness had observed the assailant "fumbling with the lamp or the light bulb" and after expert testimony established that the petitioner's print was on the bulb, also ruled that trial counsel had not been ineffective insofar as the presentation of the fingerprint evidence. According to the post-conviction court, the fingerprint evidence and the eyewitness identification by the victim, who knew the petitioner because he had visited her father's grocery store several times prior to the assault, provided such convincing evidence that "this was a case that could not have been won" by the defense.

In this appeal, the petitioner's only argument is that it was impossible for him to produce the witness Jorge, last name unknown, at the evidentiary hearing and that he is entitled to post-conviction relief because his counsel should have presented him as a witness at his trial. He claims that it is fundamentally unfair to hold him responsible for the absence of the witness from the jurisdiction and his inability to produce him as a witness at the post-conviction proceeding.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). The error must be so serious as to render an unreliable result. Id. at 687. It is not necessary, however, that absent the deficiency, the trial would have resulted in an acquittal. Id. at 695. Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

In Black v. State, 794 S.W.2d 752 (Tenn. Crim. App. 1990), this court enumerated the standard for establishing prejudice by counsel's failure to subpoena witnesses. To establish prejudice, the petitioner must: "(1) produce the witness at his post-conviction hearing; (2) show that through reasonable investigation, trial counsel could have located the witness; and (3) elicit both favorable and material testimony from the witness." Denton v. State, 945 S.W.2d 793, 802-03 (Tenn. Crim. App. 1996) (citing Black, 794 S.W.2d at 757). This standard requires a petitioner to produce the uncalled witness at the post-conviction proceeding so that the court need not speculate as to the materiality of the testimony or credibility of the missing witness. Black, 794 S.W.2d at 758.

While it may be true that the petitioner faced an impossible task in producing Jorge as a witness at the evidentiary hearing, that does not mean that he is entitled to relief or that the proceeding violated due process. Trial counsel testified that it was the policy of the public defender's office to interview each and every witness twice, first by the investigator and then by the attorney assigned to the case. If that policy was, in fact, adhered to and if the missing witness was interviewed, the logical inference is that his testimony would have been no better than that of the three witnesses produced at trial. The record demonstrates that the three witnesses who did testify at trial were helpful to the petitioner even though they could not provide ironclad testimony that the petitioner did not have the opportunity to commit the crime. They were either unaware of his presence, absent, or asleep during portions of the early morning hours when the crimes were committed.

Just as a jury can render a verdict only from the evidence presented at trial, a post-conviction court can render judgment only on the proof presented at the evidentiary hearing. Our law places upon the petitioner the burden of establishing the ineffectiveness of counsel by clear and convincing evidence. When weighed against the testimony of trial counsel that every possible witness had been interviewed in advance of trial and that the best of those witnesses had been presented in support of the alibi defense, speculation by the petitioner that Jorge might have provided testimony that could have persuaded the jury of his innocence is not enough to warrant a holding that he was denied the effective assistance of counsel and grant a new trial. By its ruling, the post-conviction court implicitly accredited the testimony of trial counsel. The ruling in <u>Black</u> controls. In summary, the evidence does not preponderate against the judgment of the post-conviction court that there was neither deficiency in performance nor prejudice in result by the failure to present this particular witness at trial.

Accordingly, the judgment is affirmed.

                        _____
GARY R. WADE, PRESIDING JUDGE